# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KEYNTE J. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.: 18-cv-2266-JBM |
| | ) |
| BRIAN CORNETT, et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW – SECOND AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files a second amended complaint alleging excessive force and failure to intervene at the time of his arrest, as well as deliberate indifference to his serious medical needs at the Vermilion County Public Safety Building ("Jail"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff alleges that on May 29, 2018, for reasons not specified, the Danville Police attempted to stop him. Plaintiff did not cooperate and, instead, ran. A police dog was sent after him, taking Plaintiff to the ground, latching onto Plaintiff's leg, then his hand. Defendant Officer Cornett walked up and told his "partner" (presumably the canine) to stop biting

1

Plaintiff's hand. The dog let go, but then bit down on Plaintiff's left arm. Plaintiff alleges that Defendant shook the dog's head so as to anger it and cause it to further injure him. Plaintiff alleges that although he was subdued, Defendant Cornett allowed the dog to bite him for at least 10 minutes before calling it off. Plaintiff asserts that Defendant Crowley was also present and did nothing to stop the attack even though the dog had "ripped open" Plaintiff's arm.

Plaintiff was thereafter taken by ambulance to the Carle Hospital, complaining of numbness in his hand. He had x-rays taken and his hand was sutured. Plaintiff alleges that on this, or perhaps a subsequent occasion, at physician at Carle recommended that he undergo physical therapy, presumably to his hand.

On the date in question, Plaintiff was transported to the Jail and seen the following day by Defendant Shelley, presumably a nurse. Defendant Shelley told him that he would be taken to Aunt Martha's Clinic in 10 days to have the stitches removed. Plaintiff complains, however, that it was 20 days before this was done. He believes Defendant Shelly was responsible for the delay.

Plaintiff claims that Defendant Shelley ordered antibiotics and asserts, without elaboration, that they did not work. Defendant thereafter placed Plaintiff on a different medication which made him sick to his stomach. Plaintiff made multiple complaints to Defendant Shelley before she sent him to be seen by a physician at Aunt Martha's Clinic. When seen, the unidentified physician told Plaintiff that he had suffered radial nerve damage and would need to be seen by a specialist. Plaintiff complains that it was two months before he was seen by the specialist.

Plaintiff alleges that Defendant Cornett violated his Fourth and Fourteenth Amendment rights by using excessive force in failing to call off the police dog. He alleges that Defendant

2

Crawley violated his Fourth and Fourteenth Amendment rights when he failed to intervene to stop the attack. He asserts that Defendant Shelley violated his Fourth and Fourteenth Amendment rights in not timely sending him to have the stitches removed, failing to order additional x-rays, failing to order the recommended physical therapy, and failing to have him earlier seen by a specialist. Plaintiff's claims against Defendant Shelly, however, do not allege an unconstitutional search or seizure, so are reviewed as arising only under the Fourteenth Amendment.

Plaintiff also asserts, in conclusory fashion, that the Jail had a policy of restricting and denying follow-up care and that Defendant Shelley acted pursuant to that policy. He requests injunctive relief, that jail staff be ordered to undertake x-rays and provide him physical therapy. He also requests declaratory relief, as well as compensatory and punitive damages.

**ANALYSIS**

Plaintiff's Fourth Amendment claims are reviewed under a reasonableness standard. "In general, the use of excessive force to effect an arrest is evaluated under the Fourth Amendment reasonableness standard, assessing the objective facts which confronted an officer at the time and taking into account, 1) the severity of the crime at issue, 2) the immediate threat to the safety of the officers or others posed by the suspect, and 3) the resistance by the suspect, including active resistance or attempting to resist arrest by flight." *Tilson v. City of Elkhart, Ind.*, 317 F. Supp. 2d 861, 866–67 (N.D. Ind. 2003), *aff'd sub nom. Tilson v. City of Elkhart, Ind.*, 96 Fed. Appx. 413 (7th Cir. 2004). It is recognized that determining whether the force used was reasonable requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989).

Plaintiff's Fourteenth Amendment claims are reviewed under an objective reasonableness standard. *Darnell v. Pineiro*, 849 F.3d 17, (2nd Cir. 2017). As a result, a Plaintiff need establish only that the defendant's conduct was *objectively* unreasonable, not that defendant was *subjectively* aware that it was unreasonable. *Miranda v. Lake*, 900 F.3d 335 (7th Cir. 2018) at *9, citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2466. (Emphasis in original).

As to Defendant Cornett, Defendant is potentially liable for excessive force if his actions were objectively unreasonable in the context of the underlying facts and circumstances. *See Tilson*, at 866–67. Here, Plaintiff alleges that, although he was subdued, Defendant Cornett allowed the police dog to bite him for another 10 minutes. He also asserts that Defendant shook the dog's head so as to anger it and encourage it to further harm Plaintiff. This is sufficient to plead that Defendant's actions were objectively unreasonable and this claim will proceed.

Plaintiff claims that Defendant Crawley was present, had an opportunity, and failed to intervene to stop the dog's unwarranted, continued attack. A defendant is liable for the failure to intervene if he knew of the unconstitutional conduct and, despite a realistic opportunity, failed to take reasonable steps to prevent the harm, causing injury to plaintiff. *See Watkins v. Ghosh*, No. 11-1880, 2014 WL 840949, at *3 (N.D. Ill. Mar. 4, 2014) (internal citation omitted). Here, Plaintiff has pled enough against Defendant Crawley and this claim, too, shall proceed.

Plaintiff also asserts several instances of deliberate indifference on the part of Defendant Shelly. Plaintiff alleges that she did not ensure that the stitches were timely removed as he was referred to Aunt Martha's [Clinic] 20 days later when the stitches should have been removed within 10 days. While it is not clear that Plaintiff was injured due to the alleged delay, there remains a question as to whether Defendant took reasonable measures to ensure that the stitches

4

were timely removed.  This claim will proceed with the issue to be addressed at trial or, if applicable, at summary judgment.

Plaintiff also complains that that Defendant Shelly prescribed an antibiotic that did not work.  He indicates, however, that she later changed this to another, though this made him sick to his stomach.  It does not appear that Defendant Shelly's actions in ordering the antibiotic were unreasonable or that it was unreasonable to change the medication when it was found to be ineffective.  While Plaintiff claims that the new medication upset his stomach, he does not claim that Defendant knew this in advance and was deliberately indifferent in ordering it.

Plaintiff also faults Defendant Shelly for not ordering physical therapy which had been recommended by the physician at Carle Hospital.  While it is not clear whether Defendant had the authority to order physical therapy, it appears that she had ordered antibiotic treatment for Plaintiff so the Court presumes she could have ordered the physical therapy as well.  As this treatment had been recommended by a physician, Plaintiff states a colorable claim against Defendant in this regard.  While he also claims that Defendant should have ordered x-rays, Plaintiff had already had x-rays at Carle Hospital and offers nothing to support that further x-rays were necessary.  This claim will not go forward.

Plaintiff also alleges that when he was sent to Aunt Martha's a second time, a physician told him that he had radial nerve damage needed to be seen by a specialist.  Plaintiff faults Defendant Shelly for his having to wait two months to be seen.  As the Court is aware, however, it is not unusual for individuals, even those not in custody, to wait several months to see a specialist. In considering whether a delay in treatment is actionable "the seriousness of the condition" must be weighed against "the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (some delay often inevitable).  Here, Plaintiff alleges a nerve

injury and numbness of his hand. This does not appear so serious a condition that a two-month delay in seeing a specialist would amount to cruel and unusual punishment. Furthermore, there was no readily discernible ease of treatment where Jail staff was constrained by the specialist's appointment calendar and could not merely schedule the evaluation on their own. This claim is DISMISSED.

Plaintiff asserts, in conclusory fashion, that the Jail itself is liable as it had a policy of restricting and denying follow-up care. While the Jail may be liable for a constitutional injury under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978), this is only if there is a "reasonable inference" that it established a policy or practice which caused the injury. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff fails to identify a particular policy and pleads only this single incident involving himself. *See Gaston v. Ghosh*, No. 11-6612, 2017 WL 5891042, at *14 (N.D. Ill. Nov. 28, 2017) (plaintiff's allegations as to his own treatment insufficient to establish a policy). *Id*. at *14, citing *Shields*, 746 F.3d at 796 (isolated incidents did not add up to a pattern of behavior that would support an inference of a custom or policy). The Defendant Jail is DISMISSED.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed solely on the excessive force claim against Defendant Cornett, the failure to protect claim against Defendant Crowley and the deliberate indifference claim against Defendant Shelley for failing to timely refer Plaintiff to the Clinic for treatment, including removal of the stitches, and for failing to order the recommended physical therapy. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. The Defendant Jail is DISMISSED.

2. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

3. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

4. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

5. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

6. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's

document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

8. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

| | |
|---|---|
| 11/22/2019 | s/ Joe B. McDade |
| ENTERED | JOE BILLY McDADE |
| | UNITED STATES DISTRICT JUDGE |